UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| ALL AMERICAN TITLE LOANS, INC., ) | Civil Action No.: 3:05-1280-CMC |
| ) | |
| Plaintiff, ) | Order on Motions for: |
| ) | (1) Attorneys' Fees and Costs; |
| vs. ) | (2) Enhanced Damages; and |
| ) | (3) Prejudgment Interest. |
| TITLE CASH OF SOUTH CAROLINA, ) | |
| INC., and ROY A. HUTCHESON, JR., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the court on motion of Plaintiff All American Title Loans, Inc., ("All American") for: (1) attorneys' fees and costs; (2) enhanced damages; and (3) prejudgment interest. All American seeks recovery of these forms of relief solely from Defendant Title Cash of South Carolina, Inc. ("Title Cash" or "Defendant").[1]  For the reasons set forth below, the motion is granted to the extent it seeks an award of attorneys' fees and costs but is otherwise denied.

**BACKGROUND**

Through this action, Plaintiff All American sought recovery from Defendants Title Cash and Roy A. Hutcheson, Jr., ("Roy, Jr.") for Title Cash's use of the trade name "All American" and related trademark depiction of the words "All American." The challenged use followed Title Cash's purchase of the majority of All American's assets related to two business locations in Columbia, South Carolina. The asset purchase envisioned that Title Cash would continue operations at the same locations.

---

[1] The jury found for Plaintiff as to its claim against Title Cash, but found Defendant Roy A. Hutcheson, Jr., not to be liable. Plaintiff's present motion for fees, costs, interest and enhancements is, therefore, pursued solely against Title Cash. The court will, therefore, refer to "Defendant" in the singular in this order.

At some point in the course of negotiations, All American offered to sell Title Cash the right to use the All American name and trademark. The offer was evidenced by inclusion of a provision in the contract which referenced a price or fee of $10,000.[2]

Title Cash elected not to purchase the right to use the All American name. This decision was denoted by striking through the lines of the contract which referred to purchase of these rights. Nonetheless, Title Cash continued to use the name at the two locations involved in the asset sale. Over the years, Title Cash also opened new locations where it used the name.[3]

The asset sale provided for Title Cash to retain certain personal property at the two business locations formerly operated by Plaintiff. One or more signs depicting All American's trade name and trademark were excepted from the transferred personal property but were left in use for a short period of time until Title Cash could obtain its own signs. When All American's owner asked that the signs be returned, Title Cash (through Roy, Jr.) initially agreed. Roy A. Hutchinson, Sr. ("Roy, Sr."), Title Cash's owner, however, decided not to return the signs.

Within a few months after the asset purchase from Plaintiff, Roy, Sr., ordered a search of records maintained by the South Carolina Secretary of State relating to ownership of the All American name and related mark. The search revealed that the name "All American Title Loans" had been registered but that the registration had lapsed. Roy, Sr., did not seek legal advice to determine

---

[2] At trial, the parties took competing positions whether the $10,000 payment was to be a single or annual payment and whether it was for use of the name generally or for the two specific locations whose assets were purchased from Plaintiff by Title Cash.

[3] Title Cash also used the name in two other locations where it had purchased the right to use the name along with business assets. This purchase was from a business entity which was legally distinct from Plaintiff, but which was owned by Paul Ashe, a relative of Plaintiff's sole shareholder.

2

the effect of the lapsed registration (in light of Plaintiff's known prior use) but, thereafter, took the position that Plaintiff had lost (or had never owned) the rights to the name.

Because the parties agreed that the elements of the various causes of action for trial were the same, the matter was submitted to the jury on a single trade name and trademark infringement claim, including infringement under the Lanham Act, 15 U.S.C.§ 1115 *et seq.*

The jury found for All American as to its claim against Title Cash for trade name and trademark infringement. By answer to special interrogatory, the jury also found the infringement to be intentional and willful.

The court, through its own independent assessment of the evidence, concurs with the liability and intent determinations. As discussed in Sections II and III below, the court also agrees with the jury as to its evaluation of the damages evidence and ultimate award.

## DISCUSSION

**I. ATTORNEYS' FEES AND COSTS**

    **A. Standard for award of fees and related costs**

In addition to authorizing an award of Defendant's profits, Plaintiff's damages, and costs of the action, the Lanham Act provides that: "The court *in exceptional cases* may award reasonable attorney fees to the prevailing party." 15 U.S.C. §1117 (a) (emphasis added). *See generally* Larsen *v. Terk Technologies Corp.*, 151 F.3d 140, 149-50 (4th Cir. 1998) (noting that 15 U.S.C. §1117 "confers a great deal of discretion on a district court in fashioning a remedy for Lanham Act violations, and [an appellate court] will set aside an award of damages only for an abuse of that discretion").

In *Scotch Whiskey Assn. v. Majestic Distilling Co.*, 958 F.2d 594 (4th Cir. 1992), the Fourth Circuit held that a prevailing plaintiff must show that the defendant acted in "bad faith" to support

an award of attorneys' fees. *Id.* at 599. In reaching this conclusion, the court stated:

> It is clear . . . that for a prevailing plaintiff to succeed in a request for attorney fees, she must show that the defendant acted in bad faith. The Senate Report states:
>
>> Deliberate and flagrant infringement of trademarks should particularly be discouraged in view of the public interest in the integrity of marks as a measure of quality of products. Effective enforcement of trademark rights is left to the trademark owners and they should, in the interest of preventing purchaser confusion, be encouraged to enforce trademark rights. *It would be unconscionable not to provide a complete remedy including attorney fees for acts which courts have characterized as malicious, fraudulent, deliberate and willful.*
>
> S.Rep.No. 1400, 93rd Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 7132, 7136.

*Scotch Whiskey*, 958 F.2d at 599 (emphasis added). The Senate Report also establishes that the purpose of an award of attorneys' fees is to "make a trademark owner's remedy complete in enforcing his mark against willful infringers . . . ." *Id.* at 600.

A case is, therefore, "exceptional" and satisfies the requirements for an award of attorneys' fees if the defendant's conduct can be characterized as "malicious, fraudulent, deliberate or willful in nature." *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001) (quoting *Scotch Whiskey*, 958 F.3d at 599). If these standards are met, the district court may, in its discretion, award fees and related costs. *See generally id*. at 370; *Gracie v. Gracie,* 217 F.3d 1060, 1068 (9th Cir. 2000) ("The district court's decision to make a fee award . . . thus flows quite naturally from the jury's finding of willful infringement and the legal standard for 'exceptional cases' under § 1117."); *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.,* 874 F.2d 431, 435 (7th Cir. 1989) (stating that clearly deliberate infringement coupled with weak arguments in favor of defendant's position made case so strong that "it might have been an abuse of discretion for the district judge not to have awarded [plaintiff] treble damages, attorney's fees, and prejudgment interest").

4

**B. Exceptional nature of case**

As noted above, the jury found and the court agrees that Title Cash's use of the trade name and trademark was willful and intentional. The facts involving use of the name and mark are particularly flagrant because Title Cash rejected All American's offer to sell or lease the rights in connection with the sale of assets. This rejection was express and was evidenced by striking through the relevant language of the contract and agreeing to return the All American Signs. Title Cash otherwise went forward with the purchase of assets at the two locations. This combination of actions amounted to an affirmative representation that Title Cash did not intend to use the All American name.

Testimony from Title Cash's owner, Roy, Sr., as well as Title Cash's arguments in opposition to the present motion, however, support a finding that Title Cash intended to use the name and mark regardless of Plaintiff's claims to them and despite Title Cash's affirmative decision not to purchase the right to use the name and mark.[4] Together, therefore, Roy, Sr.'s testimony and Title Cash's post trial arguments suggest bad faith and false intent formed either at the time the assets were purchased from Plaintiff or shortly after the transaction was complete. Title Cash also misled All American

---

[4] For example, Title Cash asserts in its memorandum (Dkt No. 125) that it reasonably believed that Paul Ashe owned the general rights to the name and mark and sold those rights to Title Cash along with the assets of Ashe's two locations in Rock Hill and Myrtle Beach. The court finds this claim not to be credible for several reasons. First, the written contract between Ashe and Title Cash refers only to the right to use the name at two specific locations. Thus, this contract with Ashe is inconsistent with Title Cash's claimed understanding of it as granting general rights to use the name. Second, the written contract with Plaintiff, with its stricken language regarding the rights to the name and mark, demonstrates that Title Cash was on notice of Plaintiff's claim of ownership. Title Cash's shifting position as to return of the sign(s) bearing the name and mark also suggests that one or more of Title Cash's officers believed that Plaintiff's claim of ownership had a substantial foundation. Finally, when considered in light of the preceding facts, Title Cash's characterization of Plaintiff's inclusion of a separate price for use of the name as an attempt to "extort" money from Title Cash suggests that Title Cash's subsequent use of the name bore some element of revenge for the perceived "extortion."

5

regarding its intent to return the sign or signs which bore the All American name and related mark. Title Cash continued its course of claiming the benefit of good will belonging to All American by making false representations in telephone book advertisements that it had been in business since 1997.[5] Title Cash exacerbated these wrongs by extending its use of the name to other locations. In taking these actions, Title Cash obtained a benefit it was on notice was claimed by Plaintiff and which it had affirmatively declined to purchase.

Despite knowledge of Plaintiff's claim of right to the name and mark, and various facts which support the probable validity of those rights, Title Cash made no significant efforts to resolve the concerns before continuing and expanding its use of the mark and name.[6] In taking this course, Title Cash elected to gamble that Plaintiff either would not bring an action or that a jury would find in Title Cash's favor. There was no evidence that Title Cash sought legal advice or performed due diligence to determine the validity of its position. *Supra* n. 6.

---

[5] The continued use of the telephone book advertisement in place at the time of the transaction was not improper. However, future advertisements should not have suggested that Title Cash was a continuation of the same business.

[6] Title Cash's only "effort" to resolve the concern consisted of its search for state registration of the mark. There was no evidence that Title Cash sought legal advice to determine the legal effect, if any, of the lapsed registration despite being on notice of Plaintiff's actual prior use and significant evidence suggesting that Plaintiff's prior use was under a valid claim of right.

6

In light of the above circumstances and various other factors outlined in Plaintiff's memoranda,[7] the court finds the infringement to be not only willful and intentional but also undertaken in bad faith. When considered collectively, various factors suggest that Title Cash mislead Plaintiff as to its intent to use the name at a time when Plaintiff might have elected not to proceed with the transaction. In addition, Title Cash's actions (most particularly relating to the yellow pages advertisement) mislead the public as to the continuous nature of the business. The court, therefore, concludes that this is an exceptional case warranting the imposition of attorneys' fees and costs.

### C.     Amount of Fee Award

Plaintiff seeks attorneys' fees in the amount of $150,869 and costs in the amount of $15,995.13. This request is well supported by lead counsel's affidavit and additional factual support. The latter includes contemporaneous time records and reports of a third-party survey addressing rates of counsel in various geographic and practice areas. Plaintiff has, moreover, carefully laid out the factors which the court must consider and addressed each of them with respect to the facts of this case.

Title Cash offers no challenge to the rate sought or hours claimed. Neither does it address any specific factors beyond a cursory challenge to the degree of novelty and difficulty and arguments going more to the merits of the case. Instead, it rests primarily on its general challenge to the award

---

[7] The court agrees with and adopts most but not all of Plaintiff's arguments as to why this case is "exceptional," warranting an award of attorneys' fees. Dkt No. 109-2 at 3-7. The court specifically declines to find that Title Cash has engaged in "vexatious litigation tactics." *See* Dkt No. 109-2 at 7 (suggesting that motion to dismiss which rested on an erroneous legal foundation and refusal to produce documentation which led to one motion to compel constituted vexatious tactics). While the matter has been hotly contested and involved a fair degree of motion practice, the matters referenced in Plaintiff's memorandum do not, in the undersigned's view, rise to the level of vexatious litigation tactics.

of any fees.[8] For the reasons set forth below, the court awards the full amount sought in fees and costs.

In determining the reasonableness of a request for attorneys' fees, a court should consider the following twelve factors:

> (1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required to properly perform the legal service; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) fee awards in similar cases.

*Trimper v. City of Norfolk Va.*, 58 F.3d 68, 73 (4th Cir. 1995). These factors are generally referred to as the *Johnson* or *Barber* factors as they were first enunciated in the case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and were adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 2 16, 226 (4th Cir. 1978). In more recent cases, the courts restate the sixth factor as relating to counsel's expectations at the outset of the litigation. *See Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *E.E.O.C. v. Service News Co.*, 898 F.2d 958 (4th Cir. 1990)).

---

[8] Defendant also argues that Plaintiff should be limited to an award of fees in an amount equal to the amount that Plaintiff would be required to pay counsel under Plaintiff's contingency agreement. Defendant offers no authority for imposing such a limitation. Even if such a limitation were to be imposed, it would not benefit Defendant as the contingency fee agreement is for 40% of any recovery obtained through trial and prior to appeal. The basic jury award, before any enhancement, is $450,000. Forty percent of that amount would be $180,000, which exceeds the amount sought by roughly $30,000.

While the court must consider all of the factors, they need not be applied in any strict manner as not all may affect the fee in a given case. *See Service News*, 898 F.2d at 965 (finding seven of the twelve factors did not affect the fee in that case, but remanding for further proceedings due to the district court's failure to explain the basis of its fee determination). These factors are considered both in determining the propriety of the rate requested and the reasonableness of the hours expended "which are then multiplied to determine the lodestar figure which will normally reflect a reasonable rate." *Service News*, 898 F.2d at 965 (citing *Daly v. Hill*, 790 F.2d at 1077). The resulting lodestar figure is strongly presumed to be the reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557 (1992)(rejecting contingency fee enhancement under the fee shifting statutes there at issue: the Clean Water Act and the Solid Waste Disposal Act). *See also Trimper*, 58 F.3d at 74 (lodestar fee based on multiplication of reasonable rate by reasonable hours is presumed to be fully compensatory without producing a windfall).

When a fee applicant has pursued both successful and unsuccessful claims, "the most critical factor ... is the degree of success obtained" because when "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole may be an excessive amount." *Brodziak*, 145 F.3d at 196-97 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). In determining whether to reduce the compensable hours, the court must first determine "whether the claims on which the plaintiff prevailed are related to those on which he did not." *Id*.

> In some cases, a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit . . . counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." . . . The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the

9

unsuccessful claim.

*Hensley*, 461 U.S. at 434-35.

The relevant factors are discussed below.

**Time and labor required to litigate the suit**. The time and labor required to litigate this action has been substantial due to the nature of the litigation, including both the legal bases of the claims and relatively complex facts. The number and nature of the motions filed, though not vexatious, has added to the time and labor required. The trial itself lasted four full days, with the jury returning its verdict on the morning of the fifth day.

The number of hours for which compensation is requested is by no means excessive. For the most part, the work was completed by a single attorney, with limited appropriate consultations with individuals who have expertise in specific fields or who were better suited to provide more cost effective assistance on particular matters. It is particularly notable that Plaintiff was able to complete the trial with only one trial counsel, which aided substantially in keeping the requested hours to a minimum. Title Cash, which was represented by two attorneys at trial, does not, in any event, challenge the number of hours sought.

**Novelty and difficulty of the questions presented by the lawsuit**. This action involved a variety of legal theories relating to trademark and trade name protections which is a relatively complex area of the law. It also involved a somewhat complicated set of facts relating to claims of ownership of the mark and name due to the partial ownership by two legally unrelated entities which were, nonetheless, owned by individuals with a familial relationship who separately sold assets to Title Cash. The facts relating to Title Cash's use of the name and mark and proffered defense of abandonment, as well as the proof relating to various theories of damages, also added to the level of

10

complexity.[9] Considered together, these factors made the case one which was moderately complex.

**Skill required to properly perform the legal service**. The court presumes for present purposes that some of the work in this action could have been performed by an associate with less experience and, therefore, a lower hourly rate than Plaintiff's primary counsel. At the same time, use of an associate for limited purposes carries with it some loss of efficiency because time must be invested in communicating expectations and results. Given the overall efficiency with which the matter was litigated by Plaintiff's counsel, the court does not find this to be a basis for reduction of the amount requested. The court has also considered under this factor that counsel undertook the work on a contingency basis which may make it inappropriate to assign the work to an associate whose work is normally performed (and rewarded) in firms such as that of Plaintiff's counsel, based on an hourly-fee basis.

**Preclusion of other employment opportunities.** The attorneys involved in pursuing this litigation on Plaintiff's behalf would, but for this employment, have been able to bill the same time at the same rate to hourly clients.

**Customary fee and nature of fee.** As noted above, the fee arrangement was contingent rather than hourly or fixed. Also as noted above, were the fee to be considered based on the contingent fee arrangement, the amount to be awarded would be higher than what is sought. *See supra* n. 8. Plaintiff's lead counsel has, however, submitted substantial support for the rates sought including support for his own usual rates as well as the reasonableness of those rates considered from a variety of perspectives (*e.g.,* rates for attorneys: from similar sized firms; with similar years of

---

[9] Both the time factor and the complexity factor are further demonstrated by the number and length of pre-trial and post-trial motions.

11

experience; and involving similar legal matters). Title Cash offers no specific challenge to the rates sought and this court finds them to be reasonable in light of the nature and complexity of the action.

**Time limitations imposed by the client or circumstances**. This factor has no particular play in the court's determination.

**The amount in controversy and the results obtained**. Although pursued under a variety of legal theories, those theories essentially boiled down to a single set of elements which the jury found to be proven as to one Defendant but not the other. The damage award, however, is essentially the same regardless of the number of Defendants found liable. Thus, from a liability standpoint, Plaintiff obtained near total success. Plaintiff has, in any event, represented that it has excluded hours which could be attributed solely to the individual Defendant who was found not to be liable. Title Cash offers no specific challenge or other argument for reduction based on the non-liability of the individual Defendant.

From a damage award standpoint, Plaintiff has also achieved substantial success. Here, again, the contingency fee agreement is some evidence of the reasonableness of the fee sought as the contingency fee agreement would support an award of roughly $30,000 more than is sought. In addition, Plaintiff obtained injunctive relief.

**Experience, reputation and ability of the attorney.** This factor has been considered in regard to the rates sought. Both the affidavit of Plaintiff's lead counsel and the supporting third-party materials support the reasonableness of the rate sought in light of counsel's experience, reputation and ability.

**"Undesirability" of the case**. Plaintiff asserts that he sought assistance from a number of attorneys before finding an attorney who would undertake the litigation. The effort required to

advance this moderately complex case with no certainty of recovery, likewise, suggests that the case was relatively undesirable.

**Nature and length of the attorney's professional relationship with the client**. This factor has no particular relevance for this case.

**Fee awards in similar cases**. Based on the materials submitted by Plaintiff and the court's own experience, the amount sought is well within the range awarded in similar actions.

### D. Conclusion as to Fees and Expenses.

Based on the factors discussed above, the court awards fees for work through and including work on the fee petition in the amount of $150,869. In addition, costs in the amount of $15,995.13 are awarded.[10]

## II. ENHANCEMENT OF DAMAGES

Plaintiff has requested enhanced damages pursuant to 15 U.S.C. § 1117(a). This section allows the court to "enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." The court may also adjust the amount of any recovery based on profits. *Id.* ("If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.").

Through its present motion, Plaintiff seeks to increase the amount awarded under the profits measure from $300,000 to $554,780 based on Plaintiff's presentation of evidence that Title Cash's

---

[10] The costs sought appear reasonable in amount and as to the nature of the charge. Title Cash has not, in any event, raised any specific challenge to the costs.

profits were the higher amount. Plaintiff also seeks to increase the amount awarded as a royalty by $11,057 as to the Columbia locations for the same reason. Finally, Plaintiff seeks to increase the royalty award by $112,099 to account for Title Cash's use of the name and mark in non-Columbia locations.

Whether to award an enhancement rests in the trial court's discretion. *Burger King Corp. v. Mason,* 710 F.2d 1480, 1495 (11th Cir. 1983) (noting also that district court may award extraordinary relief, including treble damages "*if* the district court believes that such an award would be just"–emphasis in original). The court may also adjust an award of profits if the court deems the award either excessive or inadequate. *Id.* Either action "clearly envisions the exercise of the trial judge's discretion." *Id.*

In deciding whether to grant Plaintiff's request, this court considers the underlying purposes of enhancement. These include deterring Title Cash from further willful infringements. *See Sands, Taylor & Wood v. Quacker Oats Co.,* 34 F.3d 1340, 1348 (7th Cir. 1994) (stating that remedial provisions are intended to "provide a sufficient deterrent to ensure that the guilty party will not return to its former ways and once again pollute the marketplace"); *Mobius Management Systems, Inc., v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1025 (S.D.N.Y. 1994) (noting that while punitive damages are not allowed under the Lanham Act, its treble "enhancement [provisions] may be used to deter further willful violations"). In addition, enhancements are used "to compensate a plaintiff for its actual injuries." *Getty Petroleum Corp. v. Barto Petroleum Corp.,* 858 F.2d 103, 113 (2d Cir. 1988). The court may, therefore, "enhance a monetary recovery of damages or profits" or "award plaintiff a full accounting of an infringer's profits." *Id. See also Alpo Petfoods,, Inc. v. Ralston Purina Co.,* 997 F.2d 949, 955 (D.C. Cir. 1993) ("An enhancement is appropriate to

compensate a Lanham Act plaintiff only for such adverse effects as can neither be dismissed as speculative nor precisely calculated. . . . Lost profits and market distortion are . . . appropriate bases for the catch-all enhancement . . . .").

Although the jury awarded less than the amounts sought by Plaintiff under the alternative lost profits and royalty measures of damages, those awards were appropriate and reasonable based on the evidence presented at trial. The court, moreover, agrees with the jury's evaluation of the evidence and ultimate conclusions as to these measures of damages.

The court further concludes that, when combined with the corrective advertising damages and attorneys' fees awarded above, the amounts awarded by the jury under the alternative royalty and profits measures are sufficient to serve both purposes of enhancement. That is, the collective amount awarded insures both that Plaintiff is adequately compensated and that Title Cash will be deterred from any future willful violations. As to the total deterrent effect, the court has also considered the extent of injunctive relief granted. The court, therefore, declines to award any enhancement.

### III. PREJUDGMENT INTEREST

The Lanham Act does not expressly provide for prejudgment interest. Such awards are, nonetheless, "within the discretion of the trial court [although they are] normally reserved for 'exceptional' cases." *American Honda Motor Co. v. Two Wheel Corp.,* 918 F2d 1060, 1064 (2d Cir. 1990).

For the same reasons discussed above regarding Plaintiff's request for enhanced damages, the court finds that prejudgment interest is not warranted. In reaching this conclusion the court has also considered, though not solely relied on, the fact that the damages are measured by Title Cash's profits and a presumed royalty, rather than being based on more direct proof of Plaintiff's actual losses. Thus, the basis of the damage awards is quite distinguishable from any liquidated damage measure such as would normally support an award of prejudgment interest, under more generally applicable jurisprudence.

## CONCLUSION

For the reasons set forth above, the court finds that Plaintiff is entitled to an award of attorneys' fees in the amount of $150,869 and costs in the amount of $15,995.13. The court declines to award enhanced damages or prejudgment interest.

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
May 17, 2007